600 So.2d 1067 (1992)
Ex parte Ricky Dale ADKINS.
(Re Ricky Dale Adkins
v.
State).
1900654.
Supreme Court of Alabama.
April 17, 1992.
*1068 D. Michael Barrett, Birmingham, Talmadge H. Fambrough, Pell City, and Charlotta Norby, Atlanta, Ga., for petitioner.
Don Siegelman, Atty. Gen., and James H. Evans, Atty. Gen., and Gilda Branch Williams and William D. Little, Asst. Attys. Gen., for respondent.
PER CURIAM.
Ricky Dale Adkins was convicted of capital murder. After the guilt phase of the trial, the jury considered his punishment and recommended, by a 10-to-2 vote, that he be punished by death. The trial judge agreed and sentenced Adkins to death.
On direct appeal to the Court of Criminal Appeals, 600 So.2d 1054, Adkins raised five issues. As required by Ala.Code 1975, § 13A-5-53, the Court of Criminal Appeals also reviewed the propriety of Adkins's conviction and sentence of death. After doing so, the Court of Criminal Appeals affirmed his conviction and sentence of death.
This Court granted Adkins's petition for a writ of certiorari. Rule 39(c), Ala. R.App.P. In this Court, Adkins reargues some of the issues addressed by the Court of Criminal Appeals and also presents a number of new issues. We have reviewed the record, the opinion of the Court of Criminal Appeals, and the arguments presented in Adkins's petition and brief. After thoroughly considering the issues addressed by the Court of Criminal Appeals, we conclude that the Court of Criminal Appeals correctly decided each of the issues presented to that court.
The State argues that this Court should not address the issues that were not raised in the Court of Criminal Appeals. According to Rule 39(k), A.R.App.P., this Court can notice and review any "plain error or defect" in capital cases, without regard to whether the error was brought to the trial court's attention.[1]
"In reviewing a death penalty case, this Court may notice any plain error or defect in the proceeding under review, regardless of whether it was brought to the attention of the trial court. Ex parte Waldrop, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1984). See also Rule [39(k)], A.R.App.P. This Court may take appropriate appellate action whenever the error `has or probably has adversely affected the substantial right of the [petitioner].' Rule [39(k) ], Ala. R.App.P. `Plain error' arises only if the error is so obvious that the failure to *1069 notice it would seriously affect the fairness or integrity of the judicial proceeding. United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). See also Ex parte Womack, 435 So.2d 766 (Ala.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983)."
Ex parte Bankhead, 585 So.2d 112, 117 (Ala.1991). Accordingly, this Court has reviewed the record for any plain error that would have seriously affected the fairness or integrity of the judicial proceedings. See Ex parte Lawhorn, 581 So.2d 1179 (Ala.1991) cert. denied, ___ U.S. ___, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). Of those issues, raised here by the defendant as based on "plain error," but which were not addressed by the Court of Criminal Appeals, we find only two that present any need for discussion.

I

WHETHER THE STATE IMPROPERLY EXERCISED ITS PEREMPTORY CHALLENGES BY STRIKING BLACK JURORS ON THE BASIS OF THEIR RACE.
Adkins, a white defendant, was charged with the murder of a white female. During jury selection, the State exercised 9 of its 24 peremptory strikes to remove 9 of 11 blacks from the jury. Adkins's lawyers struck one of the two remaining black jurors, and one black served on the jury. Adkins's lawyers never objected to the State's removal of blacks from Adkins's jury.
Recently, the United States Supreme Court held as follows:
"Invoking the Equal Protection Clause and federal statutory law, and relying upon well-established principles of standing, we hold that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race."
Powers v. Ohio, ___ U.S. ___, ___, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411, 419 (1991). The Court stated:
"The discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice.... This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because racial discrimination in the selection of jurors `casts doubt on the integrity of the judicial process,' ... and places the fairness of a criminal proceeding in doubt."
Id., ___ U.S. at ___, 111 S.Ct. at 1371, 113 L.Ed.2d at 425 (citations omitted). Consequently, this Court must review the question whether the State's exercise of its peremptory strikes was racially discriminatory.
In Ex parte Bankhead, supra, this Court, relying on Powers, remanded a case in which the death penalty had been imposed on a white defendant. Bankhead's attorney had not objected to the State's use of its peremptory strikes to remove 8 of 10 black venire members. This Court held that the "plain error" doctrine required it to address the Batson issue and, on rehearing after Powers was decided and relying on the mandate of Powers, held that the case was due to be remanded to the circuit court for a hearing on this issue. 585 So.2d at 117. The same holding is required here.

II.

WHETHER THE TRIAL COURT'S "REASONABLE DOUBT" INSTRUCTION TO THE JURY SATISFIED THE REQUIREMENTS OF DUE PROCESS.
Adkins also argues that the trial judge improperly instructed the jury at the close of the evidence. Specifically, Adkins contends that the trial judge's explanation of the phrase "beyond a reasonable doubt" allowed the jury to find Adkins guilty based on a lower degree of proof than that required by the due process clauses of the United States Constitution and the Alabama Constitution. Adkins also argues that the trial judge improperly referred to the same explanation of "beyond a reasonable *1070 doubt" during the sentencing phase of the trial.
The United States Supreme Court has stated:
"Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned. It is also important in our society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of guilt with utmost certainty."
In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368, 375 (1970).[2] A trial judge's error in explaining the "beyond a reasonable doubt" standard could "adversely affect[ ] the substantial rights" of a defendant, Rule 39(k), A.R.App.P., or "affect the fairness or integrity of the judicial proceeding." Ex parte Bankhead, supra. Accordingly, this Court must determine whether the trial judge's explanation of the phrase "beyond a reasonable doubt" satisfied the requirements of the Due Process Clause.
In explaining the phrase "beyond a reasonable doubt," the trial judge instructed the jury as follows:
"In considering the evidence, there are certain rules of law that guide you as to the evidence that has been offered. The State of Alabama has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the case. The defendant is not required to prove his innocence. So we use the term, and you have heard it over and over again. What is reasonable doubt? `A reasonable doubt' is one of those terms that many times you make more confusing by trying to explain what it is. You all have common sense. You have all heard the term `reasonable.' But in this context, `reasonable doubt' as used in a lawsuit has been defined to us through the law. Let me give you a few things that the law says about `reasonable doubt.'
"A reasonable doubt is a fair doubt based on reason and common sense and arising from the state of the evidence. While it is rarely possible to prove anything to an absolute certainty, a reasonable doubt is not a mere guess or surmise. A reasonable doubt may arise not only from the evidence produced, but also from a lack of the evidence. The burden is upon the State to prove the defendant guilty beyond a reasonable doubt of every essential element of the offense charged. We will get to the elements in just a minute. A defendant has a right to rely upon the failure of the prosecution to establish such proof. A defendant may also rely on the evidence brought out on cross-examination of any of the State's witnesses.
"The phrase `reasonable doubt'it may be helpful to say that a reasonable doubt is the doubt which would justify acquittal. It must be an actual and substantial doubt, and not a mere possible doubt.
"If after considering all of the evidence in this case, you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt, and it would be your duty to convict the defendant. The reasonable doubt which entitles an accused to an acquittal is not a mere fanciful, vague, conjectural or speculative doubt, but a reasonable substantial doubt arising from the evidence and remaining after a careful consideration of the testimony such as reasonable, fairminded and conscientious persons would entertain under all the circumstances. Now, you will observe that the State is not required to convince you of the defendant's guilt beyond all doubt, but simply beyond a reasonable doubt and to a moral certainty.

*1071 If, after comparing and considering all of the evidence of this case, your minds are left in such a condition that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt, then you are not convinced beyond a reasonable doubt, and the defendant should be entitled to an acquittal."
During the sentencing phase, the trial judge referred to this explanation of the phrase "beyond a reasonable doubt" several times.
Adkins's lawyers cite Cage v. Louisiana, 498 U.S. ___, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), in support of their argument on this issue. In Cage, the United States Supreme Court reversed Cage's conviction because the Louisiana trial court had given a constitutionally inadequate definition of "beyond a reasonable doubt." The trial court's definition of the term included the statement that a "reasonable doubt" "must be such doubt as would give rise to a grave uncertainty." Cage, 498 U.S. at ___, 111 S.Ct. at 329, 112 L.Ed.2d at 342 (emphasis in original). The trial court also stated that "[a] reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty." Cage, 498 U.S. at ___, 111 S.Ct. at 329, 112 L.Ed.2d at 342 (emphasis in original).
The United States Supreme Court stated that "[i]n construing the instruction, we consider how reasonable jurors could have understood the charge as a whole." Cage, 498 U.S. at ___, 111 S.Ct. at 329 (citation omitted; emphasis added). The Supreme Court's reversal was based on its determination that "a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Cage, 498 U.S. at ___, 111 S.Ct. at 330 (footnote omitted).
This Court has reviewed the trial judge's entire explanation of "beyond a reasonable doubt" in Adkins's case, and we hold that the charge is distinguishable from that in Cage. First, the trial court in this case did not make the mistake of equating a "reasonable doubt" with a "grave uncertainty"; such a mistake was one of the major flaws of the charge in Cage, and that fact was re-emphasized by Justice Stevens in his special concurrence in Gaskins v. McKellar, ___ U.S. ___, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991). Perhaps most importantly, at Adkins's trial the court repeatedly emphasized that a reasonable doubt must be based on the evidence or on a lack thereof, i.e., that it must be based on the evidence presented at trial or on a deficiency in the proof presented by the State in its attempt to meet its burden of "proof beyond a reasonable doubt." Finally, when the trial court used the term "a moral certainty," a term whose use was questioned in Cage, the court limited it by the additional instruction that the jury must have an "abiding conviction" of the defendant's guilt. Thus, we conclude that the court's charge here is not subject to the criticism that a reasonable juror could have misunderstood the meaning of "beyond a reasonable doubt," or to the criticism that it could have allowed a conviction based on a constitutionally inadequate degree of proof.

CONCLUSION.
This Court has reviewed the record, considered the arguments, examined the Court of Criminal Appeals' determination of the issues that were presented to it, and considered the merits of all the issues argued by Adkins. This Court has also examined the record for any other "plain error." After doing so, this Court concludes that the Court of Criminal Appeals committed no error in its consideration of the issues presented to it and that no "plain error" occurred in Adkins's trial and sentencing other than a possible discriminatory use by the State of its peremptory strikes.
For the foregoing reasons, the cause is remanded for a hearing pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and cases following Batson.
REMANDED.
*1072 HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS and INGRAM, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice (concurring in the result).
I concurred in the opinion written on the application for rehearing in Ex parte Bankhead, 585 So.2d 112 (Ala.1991), as a knee-jerk reaction to Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). I now believe that I erred, and I invoke the words of United States Supreme Court Justice Robert Houghwout Jackson as propitiation:
"Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others.... Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, `The matter does not appear to me now as it appears to have appeared to me then.' And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: `My own error, however, can furnish no ground for its being adopted by this Court....' Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary `Ignorance, sir, ignorance.' But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: `I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion.' If there are other ways of gracefully and good naturedly surrendering former views to a better considered position, I invoke them all."
McGrath v. Kristensen, 340 U.S. 162, 177-78, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950) (Jackson, J., concurring) (citations omitted).
In my opinion, in Bankhead we should have remanded the case for Bankhead, a white defendant accused of the capital murder of a white victim, to prove a prima facie case of discrimination by the State's striking of black jurors, if he could. I vote to remand this case for Adkins, a white defendant charged with the murder of a white female victim, to prove a case of discrimination if he can; and, if the trial court finds that Adkins met his burden, then for the State to offer its race-neutral reasons, if any, for striking 9 of 11 black jurors.
I am not certain that the abolition of peremptory challenges will assure an individual accused of a criminal offense, the State, or a plaintiff or defendant in a civil action, a fair trial. Therefore, although I respect the rights of all persons, regardless of race, religion, sex, political affiliation, or national origin and will seek to uphold those rights, there is a point where the right of litigants to a fair trial must take precedent over a somewhat tenuous right of a citizen to serve on a jury.
NOTES
[1] Rule 39(k), A.R.App.P., states:

"In all cases in which the death penalty has been imposed, upon review of the opinion of the Court of Criminal Appeals on certiorari, the Supreme Court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner."
[2] In re Winship was based on a juvenile case and held that juveniles were entitled to the Due Process Clause protection that prohibits the State from depriving an individual of liberty unless criminal liability can be proven "beyond a reasonable doubt."