MARTIN, Circuit Judge:
Petitioner Ricky Adkins, an Alabama prisoner on death row, appeals from the District Court’s denial of his first petition for writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. The District Court granted Mr. Adkins a Certificate of Appealability (COA) for the following issues: (1) whether the state unconstitutionally removed black jurors on the basis of their race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (2) whether Mr. Adkins was denied his constitutional rights to fair proceedings and due process because of a judicial conflict of interest and the appearance of impropriety. This Court granted Mr. Adkins’s request to expand the COA to include a third issue: *1244 whether his trial counsel rendered ineffective assistance of counsel during the penalty phase of his trial. Because we determine that Mr. Adkins is entitled to habeas relief based on his Batson claim, we do not decide his other claims.
I. Background and Legal Presentation of the Claim
The body of Billie Dean Hamilton, a real estate agent who was Caucasian, was discovered in St. Clair County, Alabama, on January 18, 1988. See Adkins v. State, 600 So.2d 1054, 1057, 1059, 1060-61 (Ala. Crim.App.1990) (Adkins I); Ex parte Adkins, 600 So.2d 1067, 1069 (Ala.1992) (Adkins II). Right away, Mr. Adkins, also white, was arrested and charged with capital murder for Hamilton’s death. Id.
Jury selection began on October 24, 1988. During that process, the state exercised nine of its twenty-four peremptory strikes to remove nine of eleven black veniremembers. Adkins II, 600 So.2d at 1069. Mr. Adkins struck one of the two remaining black jurors, and ultimately, only one black juror served on the jury. Id. At the time of Mr. Adkins’s trial, the rule in Alabama was that a white defendant, like Mr. Adkins, lacked standing to challenge the state’s exercise of peremptory strikes to remove black jurors from the panel. See, e.g., Owen v. State, 586 So.2d 958, 959 (Ala.Crim.App.1990), rev’d sub. nom. Ex parte Owen, 586 So.2d 963 (Ala. 1991). For this reason, there was neither an objection by the defense nor a proffer of reasons by the prosecutor for striking the nine black jurors.
The jury convicted Mr. Adkins of capital murder and sentenced him to death. See Adkins I, 600 So.2d at 1056. On August 24, 1990, the Alabama Court of Criminal Appeals affirmed his convictions and sentence on direct appeal. Id. at 1067. Before Mr. Adkins sought review in the Alabama Supreme Court, see Adkins II, 600 So.2d 1067, the United States Supreme Court delivered its ruling in Powers v. Ohio, holding “that a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races.” 499 U.S. 400, 402, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991). Following Powers, Mr. Adkins raised a Batson claim in his petition for writ of certiorari to the Alabama Supreme Court. Adkins II, 600 So.2d at 1069. The Alabama Supreme Court granted Mr. Adkins’s petition and remanded his case to the Alabama Court of Criminal Appeals for further proceedings. Id. (citing Ex parte Bankhead, 585 So.2d 112, 117 (Ala.1991), aff'd on remand, 625 So.2d 1141 (Ala.Crim.App.1992), rev’d on other grounds, 625 So.2d 1146 (Ala. 1993)).[1] The Alabama Court of Criminal Appeals then remanded Mr. Adkins’s case to the trial court for a Batson hearing on June 12, 1992, with the direction, “[d]ue return should be filed with this court within 90 days from the date of this opinion.” Adkins v. State, 600 So.2d 1072, 1073 (Ala. Crim.App.1992) (Adkins III). The return was thus due on September 10,1992.
The state trial court held the Batson hearing on July 29, 1992. During that hearing, the prosecutor proffered reasons *1245 for striking each of the nine black jurors, which the Alabama Court of Criminal Appeals summarized as follows:
Prospective juror number 59 ... was struck because he came forward and asked that he be excused from serving on the jury. He was 61 years old and had ulcers.
Prospective juror number 39 [Billy Morris] ... was struck because he answered during the voir dire that he knew about the case and because he was also single.
Prospective juror number 8 ... was struck because she stated that she knew about the case. The prosecutor also had information that she was married to or lived with an individual he had prosecuted.
Prospective juror number 52 ... was struck because of his age and because he was single. He also appeared inattentive and seemed disinterested during voir dire.
Prospective juror number 36 ... was struck because she was 53 and single. She was also unemployed and asked to be excused from serving on the jury because she had high blood pressure.
Prospective juror number 31 ... was struck because she was single and because she was known to associate with a former local chief of police who had been forced to resign.
Prospective juror number 56 ... was struck because he was 86 years old and because he indicated that he knew defense counsel.
Prospective juror number 14 ... was struck because she was single and because she worked for the Department of Human Resources (DHR) and the district attorney’s office had frequent dealings with her in her capacity as a DHR employee.
Prospective Juror number 60 ... was struck because her father had a federal conviction for a drug-related crime.
Adkins v. State, 639 So.2d 515, 517 (Ala. Crim.App.1993) (Adkins IV), withdrawn, Ex parte Adkins, 662 So.2d 925 (Ala.1994) (unpublished table decision).[2] Also during the Batson hearing, the prosecutor’s notes from the voir dire were admitted into evidence as exhibits.
On September 9, 1992, several weeks after the Batson hearing, the state trial court issued an order directing the prosecutor to supplement the Batson record by affidavit with an “explanation, if any, as to the District Attorney’s contention that Billy Morris was a single man.” The trial court’s order noted that during voir dire Mr. Morris said he was married. In an affidavit submitted by the prosecutor dated the same day, the prosecutor stated:
Mike Campbell and myself were at all times under the impression and understood that Mr. Billy Morris was a single male and he was struck by the state for that reason. We did not learn until long after the trial and upon reading the transcript that Billy Morris was in fact married and his spouse unemployed. The notes which we prepared in preparation for the Batson [h]earing also reflected that Billy Morris was single and no where [sic] in our notes taken during this jury selection process is it noted that Billy Morris was a married man.
The next day, without argument or opportunity for cross-examination by Mr. Adkins about the prosecutor’s affidavit, the state trial court entered its order “finding that there was no purposeful racial discrimination in the peremptory strikes exercised by *1246 the State as to Billy Morris, or any other black juror struck.” The trial court’s order expressly relied upon the testimony at the Batson hearing and the affidavit submitted by the prosecutor. With respect to Mr. Morris, the state trial court found that he was struck because of the “mistaken” belief that he was single. Invoking the trial court’s own personal experience with the prosecutor in other cases,[3] the trial court found the prosecutor’s assertion of mistaken belief as to Mr. Morris’s marital status “to be credible.” Upon the return from remand after the Batson hearing, the Alabama appellate courts again affirmed Mr. Adkins’s convictions and death sentence. See Adkins IV, 639 So.2d 515;[4] Ex parte Adkins, 639 So.2d 522 (Ala.1994) (Adkins V). The United States Supreme Court denied certiorari. Adkins v. Alabama, 513 U.S. 851, 115 S.Ct. 151, 130 L.Ed.2d 90 (1994).
Mr. Adkins timely sought postconviction relief in the state court pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. His Rule 32 petition was denied by the state trial court, and the Alabama Court of Criminal Appeals affirmed. Adkins v. State, 930 So.2d 524, 550 (Ala.Crim. App.2001) (Adkins VI). The Alabama Supreme Court denied discretionary review, and the Supreme Court denied certiorari. Adkins v. Alabama, 547 U.S. 1132, 126 S.Ct. 2022, 164 L.Ed.2d 786 (2006).
Mr. Adkins then timely filed the petition for writ of habeas corpus now before us, pursuant to 28 U.S.C. § 2254, in the District Court for the Northern District of Alabama on November 14, 2006. His petition asserted, among other claims, that the state unconstitutionally exercised its peremptory challenges by striking African-American jurors on the bases of their race in violation of Batson. In respondent’s brief in the District Court, the state admitted that “[t]he merits of [Mr. Adkins’s Batson] claim were reviewed and rejected by the Alabama Court of Criminal Appeals and the Alabama Supreme Court,” but asserted that the state courts’ denial of relief on this claim was entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Ultimately, the District Court denied Mr. Adkins’s Batson claim on the merits. Mr. Adkins filed a timely notice of appeal and as we recited above, the District Court granted him a COA on his Batson claim.
After oral argument before this Court, and long since the parties had submitted their briefs, we requested further briefing by the parties on the Batson issue. In that briefing, the state raised an argument for the first time that, because Mr. Adkins did not contemporaneously object to the prosecutor’s peremptory strikes *1247 at the time of trial, he cannot raise a Batson claim in his federal habeas petition. The state did not raise this argument in the District Court or in its original response brief filed in this Court. For this reason, we conclude that it has waived this argument. See United States v. Ardley, 242 F.3d 989, 990 (11th Cir.2001) (stating it is a “well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned”); United States v. Nealy, 232 F.3d 825, 830 (11th Cir.2000) (“Parties must submit all issues on appeal in their initial briefs.”); id. (holding that “parties cannot properly raise new issues at supplemental briefing, even if the [new] issues arise based on the intervening decisions or new developments cited in the supplemental authority”).
Although the dissent seems to suggest that Ardley is trumped by the policies implemented by (AEDPA), our court has applied Ardley and Nealy to a number of cases, including § 2254 cases. See, e.g., Herring v. Sec’y, Dep’t of Corr., 397 F.3d 1338, 1344 n. 4 (11th Cir.2005) (applying Nealy to § 2254 habeas case); Bond v. Moore, 309 F.3d 770, 774 n. 5 (11th Cir. 2002) (applying Ardley to § 2254 habeas case); Isaacs v. Head, 300 F.3d 1232, 1253 n. 6 (11th Cir.2002) (same).
But even if we accept the dissent’s premise, and assume that the state had not waived its arguments based upon Mr. Adkins’s failure to contemporaneously object to the prosecutor’s' discriminatory exercise of peremptory challenges at the time of trial, we would conclude that his federal claim is properly and squarely before us based on the state court record. Alabama law foreclosed Mr. Adkins, a white defendant, from bringing a Batson challenge at the time of his trial based on the state’s peremptorily striking black jurors. See, e.g., Owen, 586 So.2d at 959. Indeed, there can be no doubt that Powers was “clearly established federal law” within the meaning of 28 U.S.C. § 2254(d) at the time Mr. Adkins’s case was pending on direct appeal before the Alabama Courts. See Greene v. Fisher, — U.S.-, 132 S.Ct. 38, 45, 181 L.Ed.2d 336 (2011) (holding that “clearly established Federal law,” as determined by the Supreme Court for the purposes of § 2254(d), includes Supreme Court decisions in existence at the time of the state-court adjudication on the merits).
Neither can there be any doubt that state courts are free to fashion and enforce their own procedural rules to require that defendants make contemporaneous objections to preserve constitutional claims. See, e.g., Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977) (applying procedural bar to habeas petitioner’s constitutional claim because he did not contemporaneously object during the trial and, under state law, this failure barred state courts from hearing the claim on either direct appeal or state collateral review). “The appropriateness in general of looking to local rules for the law governing the timeliness of a constitutional claim is, of course, clear.” Ford v. Georgia, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (emphasis added). Ford confirms that Batson claims are no exception to the general rule:
In Batson itself, for example, we imposed no new procedural rules and declined either “to formulate particular procedures to be followed upon a defendant’s timely objection to a prosecutor’s challenges,” or to decide when an objection must be made to be timely. Instead, we recognized that local practices would indicate the proper deadlines in the contexts of the various procedures used to try criminal cases, and we left it to the trial courts, with their wide “variety of jury selection practices,” to implement Batson in the first instance. Un *1248 doubtedly, then, a state court may adopt a general rule that a Batson claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected.
Id. (citations omitted). Thus, the Supreme Court in Ford viewed state court rules governing the timeliness of Batson claims to be procedural rules that “limit all review of the constitutional claim itself,” so long as these rules are independent, adequate and firmly established. Ford does not call for us to treat the state rules as a prerequisite to, or element of, the constitutional claim. Id. at 423-24, 111 S.Ct. at 857-58. We do nothing new here. We have previously viewed a petitioner’s failure to comply with a state’s contemporaneous objection rule to preserve a Batson claim as a procedural impediment, subject to traditional procedural default analysis, rather than as a defect in the constitutional claim. See, e.g., Pitts v. Cook, 923 F.2d 1568, 1571 (11th Cir.1991) (finding petitioner procedurally defaulted Batson claim where he did not contemporaneously object at trial or on appeal as Alabama law required and could not show exception to procedural default rule); see also Tarver v. Hopper, 169 F.3d 710, 712-13 (11th Cir. 1999) (finding petitioner procedurally defaulted his Batson claim because he failed to contemporaneously object at trial where state court determined, under state rule, that claim was procedurally defaulted); id. at 713 (stating, “Alabama can pick its own procedural rules and has done so here”); Cochran v. Herring, 43 F.3d 1404, 1409-10 (11th Cir.1995) (concluding District Court properly addressed merits of Batson claim after finding that state courts “ha[d] not consistently applied a procedural bar” to cases like the petitioner’s).
We certainly recognize that contemporaneous objection rules can serve important state interests, such as finality as well as giving a state trial judge the opportunity to immediately address, and if necessary correct, a constitutional injury.[5] For these reasons, as well as important interests of comity and federalism, the procedural default doctrine does not permit federal habeas review of a claim rejected by a state court “if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment,” and a defendant cannot show cause and prejudice, or a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 729, 750, 111 S.Ct. 2546, 2553, 2565, 115 L.Ed.2d 640 (1991).
But this is not one of those cases. No Alabama court has ever decided that Mr. Adkins’s failure to object precluded it *1249 from considering the merits of his Batson challenge. Indeed, the record unambiguously shows just the opposite to be true. After Powers was decided, Mr. Adkins raised his Batson claim for the first time in his petition for writ of certiorari to the Alabama Supreme Court. The Alabama Supreme Court granted that petition for a writ of certiorari, according to its own procedural rules, and remanded the case to the trial court for a hearing on whether the prosecution exercised its peremptory challenges in a racially discriminatory manner in violation of Batson. This, notwithstanding Mr. Atkins’s failure to object at trial. Adkins II, 600 So.2d at 1069, 1071. Following from that remand, the state courts considered and adjudicated Mr. Adkins’s Batson claim on the merits. Under 28 U.S.C. § 2254(d), as amended by AEDPA, “[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.” Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011); (holding “an ‘adjudication on the merits’ [within the meaning of § 2254(d)] is best defined as any state court decision that does not rest solely on a state procedural bar”); see also Harris v. Reed, 489 U.S. 255, 264-65, 109 S.Ct. 1038, 1044-45, 103 L.Ed.2d 308 (1989) (presuming a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). Applying these principles, there is simply no indication in any of the state courts’ opinions which cause us to conclude that the Alabama courts adjudicated Mr. Adkins’s federal claim on anything but the merits. The dissent may question the wisdom of whether the Alabama Supreme Court should have excused Mr. Adkins’s lack of a contemporaneous objection based on Alabama’s own court rules, but the Alabama Court is entitled to implement its own wisdom on this. It is not for us to dictate to the state courts of Alabama which procedural rules it should adopt. Mr. Adkins’s Batson claim is properly before this Court.
II. Standard of Review
Our review of Mr. Adkins’s federal habeas petition is governed by 28 U.S.C. § 2254, as amended by AEDPA. Because Mr. Adkins’s claim was adjudicated on the merits in his state court proceedings, § 2254(d) precludes habeas relief unless the state court decision was (1) “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” 28 U.S.C. § 2254(d)(1), or (2) “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,” § 2254(d)(2). See also Harrington, 131 S.Ct. at 785.
Further, “[fjederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless, they are rebutted by clear and convincing evidence.” Jones v. Walker, 540 F.3d 1277, 1288 n. 5 (11th Cir.2008) (en banc); see also 28 U.S.C. § 2254(e)(1) (“[A] determination of a factual issue made by a State court shall be presumed to be correct.”). However,
when a state court’s adjudication of a habeas claim result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.
Jones, 540 F.3d at 1288 n. 5 (quotation marks and citations omitted); see also Panetti v. Quarterman, 551 U.S. 930, 953, *1250 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007) (“When a state court’s adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied.”).
If we determine that AEDPA deference does not apply, we must undertake a de novo review of the claim. McGahee v. Ala. Dep't of Corr., 560 F.3d 1252, 1266 (11th Cir.2009).
III. Discussion
It is clearly established federal law that, under the Equal Protection Clause, a criminal defendant has a constitutional “right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria.” Batson, 476 U.S. at 85-86, 106 S.Ct. at 1717. In Batson, the Supreme Court established a three-step inquiry to evaluate a prosecutor’s use of peremptory strikes. Id. at 96-98, 106 S.Ct. at 1723-24. The Court summarized Batson’s inquiry in Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) Miller-El I:
First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination.
537 U.S. at 328-29, 123 S.Ct. at 1035 (citations omitted).
Here, we focus on Batson’s third step because the parties do not dispute that Mr. Adkins established a prima facie case of purposeful discrimination or that the state proffered race-neutral reasons for striking nine black jurors. Mr. Adkins’s case was remanded by the Alabama Supreme Court for a Batson hearing, the state proffered race-neutral reasons for its peremptory strikes, and the trial court ruled on the ultimate question of discriminatory purpose. On the return from remand, the Alabama Court of Criminal Appeals determined that the trial court found “that a prima facie showing of discrimination had been made,” Adkins IV, 639 So.2d at 517, and that the prosecutor offered race-neutral reasons for its peremptory strikes of black jurors. Id. at 517-520. This satisfied Batson’s first and second steps. Thus, we look to the state court’s application of Batson’s third step.
We also focus our analysis, at least for § 2254(d)(1) purposes, on the Alabama Court of Criminal Appeals decision on return from remand in Adkins IV, 639 So.2d 515 (affirming determination that there was no Batson violation), because it is the last reasoned state court decision discussing Mr. Adkins’s Batson claim.[6]
Before discussing that opinion, however, several important points about Batson’s third step bear emphasis. First, it is a defendant’s burden to prove purposeful discrimination at Batson’s third step. See Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); Batson, 476 U.S. at 98, 106 S.Ct. at 1724.
Second, the Supreme Court in Batson emphasized that “[i]n deciding whether the defendant has made the requisite showing [of purposeful discrimination], the trial court should consider all relevant circumstances.” Batson, 476 U.S. at 96, 106 S.Ct. at 1723 (emphasis added). The reason for *1251 this is, without it, a court cannot meaningfully evaluate the state’s proffered reason. See McGahee, 560 F.3d at 1261 (“Because courts must weigh the defendant’s evidence against the prosecutor’s articulation of a ‘neutral explanation,’ courts are directed by Batson to consider ‘all relevant circumstances’ in the third step of the Batson analysis.”). As the Supreme Court has said, a facially neutral reason, on its own, does not suffice to answer a Batson challenge. See Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005) (Miller-El II) (“If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled by Batson, 476 U.S. at 100 n. 25, 106 S.Ct. at 1725 n. 25].”). It is thus abundantly clear that this principle is clearly established federal law. Under Batson, “a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.” Batson, 476 U.S. at 93, 106 S.Ct. at 1721 (quotation marks omitted).
With this being the state of the law, this Court has held a state court’s failure to consider “all relevant circumstances” at Batson’s third step is an unreasonable application of Batson under § 2254(d)(1). See McGahee, 560 F.3d at 1261-62.[7]
Third, we are mindful that a finding of no intentional discrimination is a finding of fact that is ordinarily entitled to great deference. See Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. A federal habeas court must “presume the [state] court’s factual findings to be sound unless [the petitioner] rebuts the ‘presumption of correctness by clear and convincing evidence.’” Miller-El II, 545 U.S. at 240, 125 S.Ct at 2325 (quoting 28 U.S.C. § 2254(e)(1)). But with respect to a Bat-son claim in particular, the Supreme Court has stated:
Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court’s credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence. [A Bat-son claim] ... can be supported by any evidence demonstrating that, despite the neutral explanation of the prosecution, the peremptory strikes in the final analysis were race based. It goes without saying that this includes the facts and circumstances that were adduced in support of the prima facie ease.
Miller-El I, 537 U.S. at 340, 123 S.Ct. at 1041.
A. The State Court’s Application of Batson and Determination of the Facts
Our review of the state court record leads us to conclude that the Alabama *1252 Court of Criminal Appeals unreasonably applied Batson’s third step when it failed to consider all relevant circumstances bearing on whether Mr. Adkins established purposeful discrimination. “Because courts must weigh the defendant’s evidence [of purposeful discrimination] against the prosecutor’s articulation of a ‘neutral explanation,’ courts are directed by Batson to consider ‘all relevant circumstances’ in the third step of the Batson analysis.” McGahee, 560 F.3d at 1261. Failure to do so is an unreasonable application of Batson within the meaning of § 2254(d)(1). See id. at 1261-62.
In Adkins IV, after reciting the procedural history of the case, the Alabama Court of Criminal Appeals implicitly turned to Batson’s first step and stated:
The trial court’s findings show that the state struck 9 of the 11 black prospective jurors on the venire. One black ultimately sat on the jury. The court found that a prima facie showing of discrimination had been made and it held a hearing at which the prosecutor gave the following reasons ....
639 So.2d at 517. The court then summarized the prosecutor’s reasons and found at least one valid, race-neutral reason, to support each of the strikes. Id. at 517-20. Thus, the state court implicitly completed Batson’s second step. From there, however, the Alabama Court of Criminal Appeals’ entire discussion of the state’s decision to strike Mr. Morris was limited to two sentences. The court stated it “will not reverse a trial court’s decision on a Batson violation unless that decision is ‘clearly erroneous,’ ” and then summarily concluded that “[w]e do not find the trial court’s decision here clearly erroneous.” Id. at 520. There is no indication from its opinion that the Alabama Court of Criminal Appeals considered any of the relevant circumstances bearing on the ultimate issue of discriminatory purpose beyond the fact that the prosecutor had proffered race-neutral reasons for its strikes. Because the Alabama Court did not even mention all the relevant circumstances brought to its attention by Mr. Adkins in his brief — circumstances that are supported by the record — we cannot say that it undertook “a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.” Batson, 476 U.S. at 93, 106 S.Ct. at 1721 (quotation marks omitted); see also McGahee, 560 F.3d at 1261-62 (holding that the Alabama Court of Criminal Appeals unreasonably applied federal law that was clearly established in Batson when it failed to consider all relevant circumstances at Batson’s third step).
Even giving the Alabama Court of Criminal Appeals the deference it is certainly due, we are left to conclude that it did not perform its duty under Batson’s third step by considering the relevant circumstances raised by Mr. Adkins in his brief on return to remand to that court. These relevant circumstances include: (1) the strength of Mr. Adkins’s prima facie case; (2) the fact that the prosecution explicitly noted the race of every black veniremember (and only black veniremembers) on the jury list the state relied on in jury selection; (3) the fact that specific proffered reasons provided by the prosecutor were incorrect and/or contradicted by the record; (4) the fact that the trial court relied upon, and did not subject to adversarial testing, an affidavit from the prosecutor that was submitted after the Batson hearing; and (5) the fact that the trial court relied upon facts not part of the record, such as the trial court’s personal experience with the prosecutor in unrelated matters.
We will elaborate, first with regard to the strength of Mr. Adkins’s prima facie case. During the voir dire in Mr. Adkins’s case, the state used peremptory strikes to exclude nine of eleven eligible black jurors, resulting in a strike rate of eighty-two *1253 percent. Such a “seriously disproportionate exclusion” of blacks establishes a strong prima facie case. See Batson, 476 U.S. at 93, 106 S.Ct. at 1721 (quotation marks omitted). The Alabama Court of Appeals gave no consideration or weight to this almost complete elimination of black jurors.
Second, the Alabama Court of Criminal Appeals failed to consider the fact that the prosecution explicitly noted the race of every black veniremember, and only black veniremembers, on the jury list the prosecutor relied upon in striking the jury, marking each of them with a “BM” or “BF.” This is strong evidence of discriminatory intent. See Miller-El I, 537 U.S. at 347, 123 S.Ct. at 1045 (“The supposition that race was a factor could be reinforced by the fact that the prosecutors marked the race of each prospective juror on their juror cards.”).[8]
Third, the Alabama Court of Criminal Appeals did not consider the fact that specific proffered reasons provided by the prosecutor were contradicted by the record. During the Batson hearing, the prosecutor said he struck Billy Morris because Mr. Morris was single and had prior knowledge of the case. But the voir dire transcript clearly shows that Mr. Morris said he was married. The other reason given for striking Mr. Morris, that he had prior knowledge of the case, is hardly persuasive on the facts of this case. All but five or six of the sixty-four jurors on the venire knew about the case, including at least seven of the white jurors who served on the jury. These contradictions in the record are relevant because, “when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.” Miller-El II, 545 U.S. at 252, 125 S.Ct. at 2332.
Fourth, the Alabama Court of Criminal Appeals ignored the fact that the trial court relied on evidence that was not tested by the adversarial process of cross-examination. Upon realizing after the Batson hearing that the prosecution’s reason for striking Mr. Morris was not supported by the record (i.e., that he was not single), the trial court solicited and relied upon an ex parte affidavit from the prosecutor without giving Mr. Adkins an adequate notice or opportunity to be heard.[9] As we noted, the trial court on remand conducted the Batson hearing on July 29, 1992, at which time both parties presented evidence. On September 9, 1992, the trial court entered an order soliciting an explanation from the prosecutor for why Mr. Morris was struck for being single when the voir dire transcript indicated he was married. The order was apparently served on the prosecutor on September 9, 1992, but not on counsel for Mr. Adkins. The prosecutor responded to the Court’s order by preparing an affidavit dated that same day. In the affidavit, the prosecution claimed that it struck Mr. Morris under the mistaken belief that he was single. The next day, September 10, 1992 — the day the record and trial court’s order were *1254 due to be returned to the Alabama Court of Criminal Appeals — the trial court entered its order relying upon the prosecutor’s affidavit in denying Mr. Adkins’s Bat-son claim.
Six days later, Mr. Adkins’s counsel objected to consideration of the ex parte affidavit and moved for the ex parte affidavit to be included in the record on appeal. Specifically, Mr. Adkins’s motion stated he “was provided no notice, no opportunity to contest the reliability of the information solicited or relied upon through cross-examination or other means, and no opportunity to be heard.” Generally, Mr. Adkins argued the trial court’s solicitation and consideration of the affidavit deprived him due process.
Although Mr. Adkins’s brief on return to remand to the Alabama Court of Criminal Appeals brought these crucial facts to the court’s attention the court did not mention or consider them. See Adkins TV, 639 So.2d at 517-20. The timing of the prosecutor’s ex parte affidavit is relevant because it was offered only after the trial court brought contradictions in the record to the prosecutor’s attention. As such, it is “difficult to credit” and “reeks of afterthought.” Miller-El II, 545 U.S. at 246, 125 S.Ct. at 2328. Similarly, the state’s submission of the affidavit to the trial court on the eve of the trial court’s Batson ruling, without service to Mr. Adkins’s counsel, is relevant because it assured the affidavit would not be subjected to cross-examination or other adversarial testing.[10] Further, the Alabama Court of Criminal Appeals did not consider that the trial court relied not only on the ex parte affidavit, but also on non-record evidence which Mr. Adkins did not have an opportunity to rebut, such as the trial court’s personal experience with and opinion about the reputation of the prosecutor.[11] These are relevant circumstances that should have been considered by the Alabama Court of Criminal Appeals at Batson’s third step. Instead, the Alabama Court of Criminal Appeals never mentioned them.
We also conclude the state trial court’s failure to consider all relevant circumstances in making its fact finding of no purposeful discrimination, as well as its consideration of an ex parte affidavit, is “an unreasonable determination of the facts.” 28 U.S.C. § 2254(d)(2). Batson clearly established that the Alabama Court of Criminal Appeals was required to consider all relevant circumstances in making its ultimate factual determination. Because the court overlooked material facts in its factfinding, it not only unreasonably applied Batson, it also unreasonably determined the facts at Batson’s critical third step.
In sum, we conclude the Alabama Court of Criminal Appeals unreasonably applied Batson because it failed to consider crucial facts which Mr. Adkins raised in his brief to that court relevant to Batson’s third *1255 step. See McGahee, 560 F.3d at 1263 (“Because the court omitted from step three of its analysis crucial facts which McGahee raised in his brief to that court, we find that the Court of Criminal Appeals did not review ‘all relevant circumstances’ as required by Batson.” (quoting Batson, 476 U.S. at 96, 106 S.Ct. at 1723)). For these reasons, we also conclude the state trial court unreasonably determined the facts based upon the state court record.
B. De Novo Review of Batson Claim
Where, as here, “we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254’s deference and must undertake a de novo review of the record.” McGahee, 560 F.3d at 1266. Our review of the record leads us to conclude that Mr. Adkins has met his burden at Batson’s third step and shown purposeful discrimination as to Mr. Morris. See id. at 1267-68. We emphasize that our conclusion is not based upon any one particular fact, but the totality of relevant circumstances in this case. See Miller-El II, 545 U.S. at 251-52, 125 S.Ct. at 2331 (“[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.”).
For example, we stress the strength of Mr. Adkins’s prima facie case for discrimination. Batson recognized that “a ‘pattern’ of strikes against black jurors ... might give rise to an inference of discrimination.” Batson, 476 U.S. at 97, 106 S.Ct. at 1723. Again, the state here used peremptory strikes to exclude nine of eleven potential black jurors, resulting in a strike rate of eighty-two percent. Only one black juror served on Mr. Adkins’s petit jury. The Supreme Court has observed that “total or seriously disproportionate exclusion of Negroes from jury ve-nires is itself such an unequal application of the law ... as to show intentional discrimination.” See Batson, 476 U.S. at 93, 106 S.Ct. at 1721 (quotation marks and citations omitted). Also here, like in Miller-El II, “[h]appenstance is unlikely to produce this disparity.” 545 U.S. at 241, 125 S.Ct. at 2325 (quotation marks omitted); see also id. at 240, 125 S.Ct. at 2325 (describing the prosecutor’s use of per-emptories as “remarkable” where one black juror served on the jury, but the prosecutor peremptorily struck ten of eleven eligible black jurors). We conclude the removal of so many eligible black jurors in Mr. Adkins’s case is difficult to explain on nonracial grounds. But our conclusion is not based upon statistics alone.
The record of the voir dire and the Batson hearing also support the conclusion that Billy Morris was not excused for any legitimate reason. The state said that it struck Mr. Morris because he was single and had prior knowledge about the case. But in fact, Mr. Morris told the state during voir dire that he was married. What’s more, almost all of the jurors on the venire had prior knowledge about the case, including the majority of white jurors who sat on the jury. See id. at 241, 125 S.Ct. at 2325 (“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar non-black who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.”). The absence of a legitimate reason indicates Mr. Morris was removed because of his race. See, e.g., McGahee, 560 F.3d at 1267 (reason found pretextual where there was no evidence in the record to support it).[12]
*1256 It is also worth noting that our conclusion that the state struck Mr. Morris for racial reasons is buttressed as well by the fact that the prosecution explicitly noted the race of every black veniremember (and only black veniremembers) on its jury list in preparation for voir dire, and the fact that the prosecutor acknowledged at the Batson hearing that he “was not concerned with the Batson matter [during voir dire] because it [w]as a white-on-white [crime].” This statement from the prosecutor is an explicit acknowledgment that because Mr. Adkins’s trial occurred before the Supreme Court’s decision in Powers, 499 U.S. 400, 111 S.Ct. 1364, the prosecutor was not constrained by Batson in exercising his peremptory challenge against black jurors. See, e.g., Bui v. Haley, 321 F.3d 1304, 1314-16 (11th Cir.2003) (finding, in a similar post-Powers remand context, that the prosecutor’s belief at the time of voir dire that Batson did not apply to the defendant’s case because the defendant was not black, was relevant to the prosecutor’s state of mind and indicated the prosecutor believed he could strike black jurors for any reason, including race).[13]
Our conclusion that the prosecutor exercised his peremptory strikes based on race is also bolstered by the fact that Mr. Morris was not the only black juror for whom the state offered reasons that were not supported by the record or were otherwise suspect because they applied to white jurors who were not excused. See, e.g., Adkins IV, 639 So.2d at 521 (Bowen, J., dissenting) (identifying the prosecutor’s reasons for striking jurors 56 and 60 as “highly suspect”). For example, besides age, the prosecutor gave two reasons for the peremptory strike of black juror number 60: (1) her father was either in prison or had been in federal prison on drug related crimes; and (2) she did not respond during voir dire when jurors were “asked if they had any family member that had ever been in prison.” Id. But as Judge Bowen observed in his dissent, “[t]o the extent that the strike of prospective juror number 60 was based on the [prosecutor’s] assessment that the juror *1257 displayed a lack of forthrightness by failing to answer the voir dire question about ‘family member[s] in prison,’ that assessment was not supported by the record on voir dire.” Id. (alteration in original). Indeed, the precise question asked by the prosecutor during the voir dire was this: “DOs there anyone on the jury panel that has a relative or close friend, presently or in the past, in the State prison system?” Id. Based on this, Judge Bowen reasoned, and we agree,
A reasonable juror with a Mend or relative in the federal penitentiary could conclude that the question dealt solely with the State prison system, as specified, especially since the [prosecutor] inquired further whether the fact that any of the jurors had a relative or friend in the state penal system “would ... make [them] feel ill toward the [prosecutor] because possibly people like us are responsible for putting a relative or loved one or friend in prison?”
Id. (alteration in original). While the prosecutor may have been justified in striking juror 60 based on information that her father had been in prison, “[t]he credibility of that reason, however, was called into question by the fact that the district attorney failed to strike at least one white veniremember [juror 48] who answered that he had a brother-in-law in prison. That veniremember in fact served on the jury.” Id. (citation and footnote omitted). Again, “[i]f a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.” Miller-El II, 545 U.S. at 241, 125 S.Ct. at 2325.
In this same vein, we note that the state struck prospective black juror number 56 because he was 86 years old, could not hear well, and “acknowledged that he knew [defense counsel] personally.” Adkins IV, 639 So.2d at 521 (Bowen, J., dissenting) (alteration in original). While each of these reasons may be facially race-neutral, two of them are suspect here. The prosecutor’s reliance on the fact that juror 56 knew defense counsel is suspect because the state did not strike a white verniremen, juror 48, who also acknowledged he knew defense counsel. Id. Indeed, the prosecutor did not strike juror 48, and this juror served on the jury, even though he “shared two characteristics used [by the prosecutor] to justify the strikes of blacks — that he knew defense counsel and that he had a relative in prison.” Id. at 522. This is further indication, under the third step of the Batson analysis, that the prosecutor’s stated reasons for striking black jurors were pretextual. Id.
Similarly, and again under this required analysis, the prosecutor’s reliance on juror 56’s age is suspect in light of the fact that the prosecutor proffered “age” as a reason for striking six prospective black jurors, ranging in age from 31 to 86 years old: black juror 59, age 61; black juror 52 (age 32); black juror 36 (age 53); black juror 56 (age 86); black juror 14 (age 36); and black juror 60 (age 31). With respect to age, the prosecutor stated during the Bat-son hearing “that the defendant was a single male and in that same age bracket of these people that were struck.” Mr. Adkins was twenty-three years old at the time of voir dire. The prosecutor’s “same age bracket” rationale clearly did not apply to all of the six black jurors struck by the prosecutor on this basis.
The prosecutor’s reliance on age to strike prospective black jurors is also undermined by the fact that the state did not strike white jurors of similar age. For example, the prosecutor did not strike white juror 6 (age 44); white juror 13 (age 48); white jury 29 (age 48); white juror 28 (age 49); white juror 20 (age 58); and white juror 17 (age 62). The prosecutor’s *1258 proffered justification of age as a reason to strike such a wide range of prospective black jurors who were clearly not in the “same age bracket” as Mr. Adkins, and the fact that white jurors of similar age were allowed to serve, supports our conclusion that the prosecutor’s reliance on age was pretextual. This fact, when considered with all of the other relevant circumstances bearing on whether the defendant has proved purposeful discrimination, bolsters our conclusion that there was a Bat-son violation in Mr. Adkins’s case.
IV. Conclusion
For all these reasons, AEDPA deference does not apply to the state courts’ unreasonable application of Batson and unreasonable determination of facts based on the state court record. This record compels a finding that the state used its peremptory strikes in a discriminatory manner and violated Mr. Adkins’s right to Equal Protection as clearly established by Batson. See McGahee, 560 F.3d at 1270. Any contrary finding would be inconsistent with the clear and convincing evidence.
The District Court’s order denying Mr. Adkins habeas relief is reversed, and the case is remanded to the District Court with instructions to issue the writ of habe-as corpus conditioned on the right of the State of Alabama to retry him.
REVERSED and REMANDED.

. In Ex parte Bankhead, the prosecutor peremptorily challenged eight of ten black jurors on the venire in a capital case with a white defendant. 585 So.2d at 115, 117. Two blacks served on the jury. Id. at 117. After Powers was decided, the Alabama Supreme Court remanded Bankhead's case for a Bat-son hearing even though no objection was made at trial. Id. ("Based on Powers, we must now hold that Bankhead, a white, has standing under the Equal Protection Clause to challenge the prosecutor's allegedly racially motivated use of peremptory challenges.”).

. Because our discussion of the Batson issue centers on juror Billy Morris, we identify him by name.

. In support of its finding that the prosecutor was credible, the state trial court’s order stated:
This Court having worked with District Attorney Davis on many other cases in the past, finds that he has never intentionally misrepresented any fact to this Court to gain an advantage in a criminal proceeding. He has many times admitted facts which were to the detriment of his cases and accepted the consequences of facts that were against his case. This Court has never found District Attorney Davis to purposefully exclude blacks from juries in cases prosecuted by him. The Court finds his statement as to mistaken belief as to the marital status of jury [sic] Morris to be credible.

. Judge Bowen dissented from the Alabama Court of Criminal Appeals opinion affirming the trial court’s Batson decision. See Adkins IV, 639 So.2d at 520-22 (Bowen, J., dissenting). According to Judge Bowen, ”[i]t is obvious here that the district attorney engaged in disparate treatment of black veniremembers struck as opposed to white veniremembers possessing the same characteristics.” Id. at 520. Judge Bowen dissented also because he believed "the trial court’s finding of non-discrimination was clearly erroneous.” Id. at 522.

. We are certainly aware that a contemporaneous objection would, in many cases, allow the trial court to evaluate evanescent evidence relevant to Batson’s third step, like the demeanor of the attorney exercising the peremptory challenge and the reasons offered by the attorneys relating to the demeanor of the jurors. See Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008). But the passage of time by itself, where there is no procedural default, does not bar the presentation of a Batson challenge or evidentiary proceedings after the trial in support of the claim. See, e.g., Miller-El I v. Cockrell, 537 U.S. 322, 328-29, 123 S.Ct. 1029, 1035, 154 L.Ed.2d 931 (2003) (Miller-El I) (noting that petitioner's Batson claim relied on pattern and practice evidence presented pretrial before Batson was decided, and, after his case was remanded by the Texas Court of Criminal Appeals for new findings based on Batson)', Batson, 476 U.S. at 100, 106 S.Ct. at 1725 (remanding case to the trial court for proceedings to determine prosecutor’s explanation, unstated at trial, for his removal of all black persons on the venire and whether facts establish purposeful discrimination); Madison v. Comm’r, Ala. Dep’t of Corr., 677 F.3d 1333, 1339 (11th Cir.2012) (remanding petitioner’s case to the District Court for further proceedings "to complete the final two steps of the Batson proceedings").

. The Alabama Supreme Court summarily affirmed Mr. Adkins’s appeal on the return from remand of his Batson hearing in Adkins V, 639 So.2d 522. Thus, we “look through” to the Alabama Court of Criminal Appeals decision for the purpose of our analysis under § 2254(d)(1). See McGahee, 560 F.3d at 1261 n.12.

. As this Court has observed:
The Supreme Court has repeated this point in later opinions applying Batson. Snyder v. Louisiana, [552 U.S. at 478], 128 S.Ct. [at] 1208 ("[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted.”); Miller El [II], 545 U.S. at 251-52, 125 S.Ct. at 2331-32 ("[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.”); Hernandez v. New York, 500 U.S. 352, 363, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395 (1991) ("An invidious discriminatory purpose may often be inferred from the totality of the relevant facts.”) (quoting Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 2048-49, 48 L.Ed.2d 597 (1976)).
McGahee, 560 F.3d at 1262 n.13.

. Although we cite Miller-El I to support our conclusion, we need not rely on Miller-El I to draw the inference that racial notations created by the prosecution on jury strike sheets are relevant circumstances indicative of racial bias. Our conclusion is compelled by the facts.

. By ex parte, we mean the trial court solicited and considered evidence from one party only, without adequate notice or argument from Mr. Adkins. Mr. Adkins’s counsel represented to the Alabama Court of Criminal Appeals that he received both the final order and the solicitation order “several days later'' and the affidavit “was never served on defense counsel.’’ The state does not dispute these facts.

. In other contexts, the Supreme Court has observed that "[t]he opportunity for cross-examination ... is critical for ensuring the integrity of the fact-finding process. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.” Kentucky v. Stincer, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (quotation marks omitted).

. The trial court based its finding of no purposeful discrimination in part on its own opinion of the prosecutor's reputation. However, there was no evidence presented during the Batson hearing about the prosecutor’s reputation, other than assertions of good faith by the prosecutor. Neither was there evidence of the prosecutor’s use of peremptory strikes against blacks in other criminal proceedings. It was therefore not reasonable for the trial court to interject non-record facts into its Batson analysis. Importantly, as with the prosecutor’s affidavit itself, Mr. Adkins did not have notice or an opportunity to be heard on these matters.

. The removal of even one juror for discriminatory reasons is sufficient to violate Batson. As this Court has previously stated, "under *1256 Batson, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown.” United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986); see also Snyder, 552 U.S. at 478, 128 S.Ct. at 1208 (“Because we find that the trial court committed clear error in overruling petitioner’s Batson objection with respect to [one juror], we have no need to consider petitioner’s claim regarding [a second juror].”); Parker v. Allen, 565 F.3d 1258, 1270 (11th Cir.2009) ("It is not necessary to show that all or even a majority of the prosecutor’s strikes were discriminatory; any single strike demonstrated to result from purposeful discrimination is sufficient.”).

. The prosecution’s ex parte affidavit asserting a good faith mistake about Mr. Morris’s marital status is not an adequate explanation for striking him. The affidavit was solicited long after the evidentiary hearing had concluded and without fair notice to or an opportunity to respond by Mr. Adkins. This type of evidence, not subjected to the crucible of adversary testing, has little weight. Neither can we ignore the fact that the prosecutor, with the benefit of the voir dire transcript and ample notice of the Batson hearing, clearly justified striking Mr. Morris because he was single at the Batson hearing. Indeed, we know from his testimony at the Batson hearing, the prosecutor had reviewed the transcript of the voir dire in preparation for the Batson hearing. Given these facts, and the strike rate of eighty-two percent of black jurors, a mere assertion of good faith that the prosecution believed Mr. Morris was single at the time of the Batson hearing is not sufficient to overcome the indication that the proffered reason was pretextual. Cf. Batson, 476 U.S. at 98, 106 S.Ct. at 1723-24 ("Nor may the prosecutor rebut the defendant’s case merely by denying that he had a discriminatory motive or affirming] [his] good faith in making individual selections.”) (quotation marks omitted).