[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11999

_____

D.C. Docket No. 2:12-cv-01088-ECM-SRW


MARIA N. VINSON,

Plaintiff-Appellant,

versus

KOCH FOODS OF ALABAMA, LLC,
KOCH FOODS, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 3, 2021)

Before WILLIAM PRYOR, Chief Judge, GRANT and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Maria Vinson, a Puerto Rican woman, sued her former employer, Koch Foods of Alabama, LLC ("Koch"), for race and national origin discrimination under 42 U.S.C. § 1981 and Title VII. Following a seven-day jury trial on the merits of her claim, the jury rendered a verdict in favor of Koch and the District Court entered final judgment consistent with that verdict. On appeal, Vinson seeks a new trial on two grounds: first, that the District Court improperly overruled her *Baston*[1] challenges against two of Koch's preemptory jury strikes and second, that the District Court abused its discretion by failing to grant a new trial due to Koch counsels' violation of a pretrial order entered on a motion *in limine*. As Vinson has failed to meet her high burden on both grounds, we affirm the District Court.

I.

Koch operates facilities where it kills, processes, and packages chickens and chicken byproducts. In early 2010, David Birchfield, the Human Resource Manager for Koch's Montgomery complex, hired Vinson as a new hire orientation clerk and translator. Vinson's job duties included processing new hires, translating, issuing and verifying identification cards and documents, completing federal forms for all personnel, conducting personnel drug screening, maintaining personal attendance records, and assisting with payroll.

---

[1] *Baston v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986).

2

On January 5, 2012, Vinson and a white co-worker, Heather Bowen, asked the senior HR person in their department, Misti James, for permission to visit a co-worker in the hospital. Vinson and Bowen received permission and left the HR office, followed shortly thereafter by James. This left the office unattended for three hours. Upon their return, Birchfield suspended all three until further notice. On January 11, Birchfield allowed Bowen and James to return to work, then allowed Vinson to return the following day.

Soon after her return, Birchfield changed Vinson's job duties by moving her from the HR office to the production line to better train new hires. No changes were made to the duties of the other women, and Birchfield filled Vinson's old job with another Puerto Rican woman. In May 2012, Birchfield fired Vinson and eliminated her position.

Following her termination, Vinson filed suit against both Koch and Birchfield, claiming discriminatory discipline and wrongful termination under §1981 and Title VII, among other claims. The District Court granted summary judgment in favor of the defendants on all of Vinson's claims. On appeal, we reversed in part, allowing the discriminatory discipline and wrongful termination claims to go forward. *Vinson v. Koch Foods of Alabama*, 735 F. App'x 978 (11th Cir. 2018). The case then proceeded towards trial.

A.

3

Prior to trial, Vinson and Koch both moved the District Court *in limine* to suppress any reference to a claim or part of a claim that had been dismissed, whether voluntarily or not. While these motions were pending, Vinson filed a motion to voluntarily dismiss with prejudice all claims against Birchfield. On January 11, 2019, the District Court granted Vinson's motion to dismiss all claims against Birchfield with prejudice and granted the parties' motions to prohibit references to "any claim or part of a claim" which had been dismissed.

The trial began February 4, 2019, with jury selection. The District Court determined that the jury would consist of ten jurors with no alternates and that each side would receive three peremptory strikes. Peremptory strikes would be made in jury number order until either both sides exhausted their peremptory strikes, or ten jurors remained unchallenged, with no back striking allowed.[2] The venire was comprised of twenty-three prospective jurors, at least nine of whom were black.[3]

---

[2] Juries can be selected through a variety of methods. One method, followed here, is for the parties to consider in numerical order the jurors remaining after the for-cause challenges. Once a party makes a peremptory strike against a juror, that party cannot then "back strike," or in other words use a peremptory strike against a juror with a lower number (e.g., if a party strikes Juror 10, they can no longer strike Jurors 1–9). Peremptory strikes then continue until either both parties have accepted the requisite number of jurors or no peremptory strikes remain, in which case the jury consists of the requisite number of jurors remaining with the lowest juror numbers. Here, that would be the remaining jurors with the ten lowest juror numbers.

[3] Specifically, Jurors 2, 3, 9, 16, 23, 27, 28, 31, and 32 were black. The record is unclear as to the race of three members of the venire who neither received any challenges nor served on the jury.

At the close of the venire voir dire, both Vinson and Koch made for-cause strikes. Vinson made one for-cause strike against Juror 29, a white male who expressed dislike towards lawsuits; the District Court denied the strike. Koch then made six for-cause strikes against Jurors 16, 23, 27, 28, 31, and 41. The Court granted the strikes against Jurors 23, 27, 31, and 41: Jurors 23 and 41 were vegans with moral objections to Koch killing animals, Juror 27 expressed a clear preference for believing plaintiffs, and Juror 31 left the courthouse while his strike was under consideration. Koch's other two strikes, against Juror 16 for disliking at-will employment and Juror 28 for appearing to fall asleep during voir dire, were denied. As Jurors 16, 23, 27, 28, and 31 were black, Vinson expressed concern that Koch was challenging predominantly black jurors, but explicitly chose not to make a *Batson* challenge.

Vinson and Koch then moved on to making their peremptory strikes. The parties made their peremptory strikes in alternating order, with Vinson striking Jurors 10, 22, and 29 and Koch striking Jurors 9, 16, and 32. As all three of Koch's peremptory strikes were black, Vinson did make a *Batson* challenge here against the peremptory strikes of Jurors 9 and 32. Vinson did not challenge the peremptory strike against Juror 16 as Koch had challenged her earlier for-cause.

The District Court began by asking for Vinson's prima facie case. Vinson argued that Koch's use of most of its for-cause strikes and all its peremptory

strikes against black jurors created a prima facie case that Koch was striking jurors based on their race. Additionally, Vinson noted that Koch had not asked Jurors 9 and 32 any individual questions despite doing so with the other prospective jurors, leaving no apparent reason other than race as to why they were struck. The Court then asked Koch to explain its strikes against Jurors 9 and 32.

In response, Koch stated that it had conducted background checks on all the prospective jurors and discovered that Juror 9 had an extensive litigation history, including various debt collection actions against her and a previous suit she had filed against a coworker. Taken together, Koch believed this litigation history would align Juror 9 more with a plaintiff's perspective. Vinson replied that Koch had not struck Juror 1, who had a DUI, or Juror 22, who had previously filed for Chapter 7 bankruptcy. Koch answered that Vinson had already struck Juror 22 using one of her peremptory challenges before Koch could reach him and that an extensive history of civil litigation was much more likely to align a juror with a plaintiff in a race discrimination case than a prior DUI. The District Court then overruled Vinson's *Batson* challenge as to Juror 9.

Next, Koch moved on to Juror 32. Despite Vinson's claim, Koch stated that it had individually questioned Juror 32 and discovered she was a current union member who had previously filed a worker's compensation claim. Koch struck her because her responses towards questioning about her worker's compensation claim

6

indicated she had reservations about the fairness of the process. In response, Vinson admitted Juror 32 had indicated "hiccups" in the worker's compensation process, but not that she would prefer one side or the other when making her decision, then noted that worker's compensation claims were different than discrimination claims. The District Court found that Koch had given a non-discriminatory explanation and overruled the *Batson* challenge as to Juror 32. Of the final ten jurors, three were black: Juror 28, one of Koch's unsuccessful for-cause strikes, and two unchallenged black jurors.

## B.

Opening statements were made on February 4, with testimony beginning February 5. On February 6, Vinson introduced without objection Exhibit 57, Koch and Birchfield's response to Vinson's first request for production, and then questioned Birchfield about its contents. Notably, Exhibit 57 listed both Koch and Birchfield as defendants in the suit, as the production request had occurred before Birchfield was dismissed. During a sidebar after the introduction of Exhibit 57, Koch counsel pointed out that Exhibit 57 identified Birchfield as a party despite the order *in limine* but said they did not object to it.

On February 8, counsel for Koch questioned Vinson about Exhibit 57. Their conversation went as follows:

Q: I'd like to show you Plaintiff's Exhibit 57, what has been entered as Plaintiff's Exhibit 57, which were requests for production that you served on Koch Foods of Alabama and David Birchfield. Do you see that?

A: Yes, ma'am.

Q: And the reason that those requests for production were served on Koch Foods and David Birchfield is because in addition to suing Koch Foods, you also sued David Birchfield in his case; isn't that correct?

A: Initially, yes, ma'am.

Q: And you sued him for race discrimination; correct?

A: Yes, ma'am.

Q: And you dismissed your claims against him; correct?

A: It was discussed with the lawyer, and it was – come to the determination. Yes, ma'am.

Counsel: Your Honor, we ask the Court to take judicial notice that David Birchfield was dismissed from this action as a prevailing party.

At this point, the District Court asked counsel for Vinson if she had any objections, and the parties went into a sidebar. Here, counsel for Vinson objected to the entire discussion of Birchfield's former party status as a violation of the

8

order *in limine*, in particular Koch's description of Birchfield as a "prevailing party," and asked for a mistrial. The Court denied the motion for a mistrial, noting that Vinson herself had opened the door to Birchfield's status as a former party by introducing Exhibit 57 unredacted, but also refused to take judicial notice of Birchfield being a prevailing party or allow this line of questioning to continue. Vinson's requests for instructions stating that Birchfield's dismissal was not an adjudication on the merits and that Koch counsel's comments were an improper violation of a court order were also denied, and the trial resumed. On February 12, the jury returned a unanimous verdict in favor of Koch. Following the trial, Vinson's motion for a new trial based on the violation of the order *in limine* was denied.

## II.

The standard of review of a trial court's factual findings in a *Batson* hearing is "highly deferential." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 479, 128 S. Ct. 1203, 1209 (2008)). "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Id.*

We review both a motion for mistrial and a motion for a new trial for abuse of discretion. *Ruiz v. Wing*, 991 F.3d 1130, 1137 (2021).

## III.

First, we consider Vinson's two *Batson* challenges against the peremptory strikes of Jurors 9 and 32. Under *Baston*, attorneys are prohibited from using their peremptory strikes to exclude jurors based on race. *Baston v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986). *Baston* challenges takes the form of a three-part inquiry. *Snyder v. Louisiana*, 552 U.S. 472, 476, 128 S. Ct. 1203, 1207 (2008). First, the challenging party must establish a prima facie case that the peremptory strike was based on race. *Id.* The challenging party can establish a prima facie case through a variety of evidence, including comparing the number of strikes against one race versus another, pointing out disparate questioning for jurors of different races, and side-by-side comparisons of struck jurors versus non-struck jurors. *Flowers*, 139 S. Ct. at 2243.

If a prima facie case is established, the striking party must then offer a race-neutral basis for the strike. *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207. This is a very low bar; so long as the basis is race-neutral, "almost any plausible reason can satisfy the striking party's burden." *U.S. v. Walker*, 490 F.3d 1282, 1293 (11th Cir. 2007). Finally, after considering the arguments of the parties and the relevant evidence, the trial court must determine whether the offered reasons were sincere or merely pretextual. *Flowers*, 139 S. Ct. at 2243–44. This last step is fundamentally a determination of credibility, which lies "peculiarly within a trial judge's province" and to which reviewing courts owe great deference on appeal.

*Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208 (quoting *Hernandez v. New York*, 500 U.S. 352, 356, 111 S. Ct. 1859, 1869 (1991)).

Vinson did establish a prima facie case for Juror 9. Koch's use of all its peremptory challenges and most of its for-cause challenges against black jurors coupled with Koch not individually questioning Juror 9 despite doing so with the other prospective jurors was sufficient to warrant further inquiry; at that point, Juror 9's race was the only reason apparent to Vinson or the District Court for Koch's peremptory strike. However, once Koch disclosed that its pre-trial research on the prospective jurors had revealed Juror 9's extensive history of litigation and debt collection, Koch easily met its burden of showing a plausible, race-neutral basis for the strike. Vinson's response, that this extensive litigation history was merely pretextual because Koch chose not to strike a juror Vinson had already struck or a juror with a DUI, was hardly convincing, and on this record, we cannot say the Court's determination of Koch's credibility was clear error.

The record is less clear as to whether Vinson successfully established a prima facie case for Juror 32. Vinson challenged the strike against Juror 32 for the same reasons as the strike against Juror 9, but with one major difference – Koch actually had individually questioned Juror 32 and discovered that she was both a current union member and a previous worker's compensation claimant with concerns about the fairness of her treatment. Without the disparate questioning

11

argument, Vinson's prima facie challenge rested solely on Koch's use of its peremptory and for-cause strikes against black jurors. While the use of for-cause strikes against predominantly one race can be considered when making a prima facie case, Koch had offered individually tailored reasons for each of the for-cause strikes and won most of them, undermining their usefulness in establishing a prima facie case. *See McGahee v. Ala. Dept. of Corr.*, 560 F.3d 1252, 1257–59 (2009) (allowing the consideration of for-cause strikes in establishing a prima facie case). Furthermore, Koch left two black jurors completely unchallenged, and had previously attempted to strike one of its three peremptory challenges for-cause.

However, even assuming a prima facie case, Koch certainly offered plausible non-discriminatory reasons for the strike; a company defending the decisions of a manager in a civil lawsuit would naturally not want a current union member and disgruntled worker's compensation claimant on the jury. Vinson's counterargument, that Juror 32 had not given any particular indication of bias, did not make the offered basis any less race-neutral. The District Court did not commit clear error by finding these reasons credible.

## IV.

Next, we turn to Vinson's argument that Koch counsel's violation of the order *in limine* so prejudiced the jury that a new trial is warranted. When considering on appeal a motion for mistrial based on counsel's misconduct, we

12

evaluate "the entire argument, the context of the remarks, the objections raised, and the curative instruction" to determine whether the inappropriate remarks were "such as to impair gravely the calm and dispassionate consideration of the case by the jury." *Ruiz v. Wing*, 991 F.3d 1130, 1141 (11th Cir. 2021) (quoting *Allstate Ins. Co. v. James*, 845 F.2d 315, 318 (11th Cir. 1988)). Our review is limited to abuse of discretion, as only the trial judge "had the opportunity to hear the offensive remarks within the context of the arguments and to view their effects on the jury." *Cote v. R.J. Reynolds Tobacco*, 909 F.3d 1094, 1103 (11th Cir. 2018) (quoting *James*, 845 F.2d at 318).

We have grave doubts about whether Koch counsels' behavior even amounted to misconduct. Vinson, not Koch, introduced Exhibit 57 into evidence and thus put into question Birchfield's status as a former defendant, opening the door to questioning on the subject. Indeed, Vinson admits as much in briefing, and focuses her objection on Koch's description of Birchfield as a "prevailing party," claiming that description ran afoul of the order *in limine* by going beyond the door Vinson opened. Even so, the District Court could reasonably conclude that opening the door to the existence of previous parties also opened the door to how those parties left the litigation; furthermore, the order *in limine* only prohibited references to dismissed claims, not necessarily to the status of former parties.

13

But even if Koch's description of Vinson as a "prevailing party" violated the order *in limine*, this description hardly amounted to a remark that would "gravely impair" the impartiality of the jury. This was a single, two-word phrase, presented in a motion for judicial notice that the District Court ultimately denied, following three questions about an exhibit Vinson herself admitted. In comparison, the trial lasted for seven days, starting with opening arguments on February 4 and ending with closing arguments and a verdict on February 12. The potential impact of the "prevailing party" remark was also limited by the actions of the Court; if the jury noticed the "prevailing party" motion, then the jury would also have noticed the Court refusing to grant that motion.

Nor did counsel for Vinson ever ask for an appropriate curative instruction. During the sidebar following the motion for judicial notice, Vinson counsel asked the District Court for two separate instructions. The first instruction would have informed the jury that there was no "determination on the merits" as to Birchfield. As the Court noted, this instruction would be an incorrect description of the law; dismissals with prejudice, even voluntarily, are adjudications on the merits. *See* FED. R. CIV. P. 41(b). The second requested instruction would have informed the jury that Koch counsels' comment was improper and violated a court order. This instruction would have simply punished Koch counsel without addressing Vinson's concerns about the "prevailing party" comment; an instruction that Koch counsel

acted improperly does not by itself instruct the jury to disregard the offending remarks. In fact, counsel for Vinson never explicitly asked the Court to instruct the jury to disregard the "prevailing party" comment. A court cannot give an appropriate curative instruction if the parties never request one.

Considering the length of the trial, the shortness of the offending remarks, the context of the "prevailing party" comment as a response to a door Vinson opened, and the curative instructions offered, we cannot find that the District Court abused its discretion by denying Vinson's motions for mistrial and a new trial.

V.

For the aforementioned reasons, we conclude that Vinson has not met her burden as to either the *Baston* challenges or the motions for mistrial or a new trial. Accordingly, the judgment of the District Court is

**AFFIRMED.**