[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14523

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JARMAL WILLIAMSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cr-20144-RNS-1

_____

Before ROSENBAUM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Jarmal Williamson appeals his conviction and sentence for possession of a firearm and ammunition by a convicted felon under 18 U.S.C. § 922(g)(1). He makes three arguments on appeal. First, he asserts that the district court clearly erred by overruling his *Batson* challenge during jury selection. Second, he contends that the district court abused its discretion and violated Rule 403 of the Federal Rules of Evidence by precluding him from cross-examining the Government's "street slang" expert regarding his interpretation of a jail call without opening the door to highly prejudicial evidence, which chilled his ability to present a complete defense. And third, he argues that the district court violated the Eighth Amendment by applying a mandatory 15-year enhancement to his sentence, pursuant to the Armed Career Criminal Act ("ACCA"), despite his status as a young, non-violent offender with under one year of prison time. Because we are writing for the parties, we will not set out the facts at length in a separate section of the opinion.

## I.

Williamson's first argument on appeal is that the district court erred by denying his *Batson* challenge after jury selection was completed. In *Batson v. Kentucky*, the U.S. Supreme Court prohibited attorneys from using their peremptory strikes to exclude jurors based on their race. 476 U.S. 79, 89, 106 S. Ct. 1712, 1719

(1986). We have recently summarized *Batson*'s "three-part inquiry" as follows:

> First, the challenging party must establish a prima facie case that the peremptory strike was based on race. The challenging party can establish a prima facie case through a variety of evidence, including comparing the number of strikes against one race versus another, pointing out disparate questioning for jurors of different races, and side-by-side comparisons of struck jurors versus non-struck jurors.
>
> If a prima facie case is established, the striking party must then offer a race-neutral basis for the strike. . . . Finally, after considering the arguments of the parties and the relevant evidence, the trial court must determine whether the offered reasons were sincere or merely pretextual.

*Vinson v. Koch Foods of Ala., LLC*, 12 F.4th 1270, 1276 (11th Cir. 2021) (citations omitted). Here, because the district court prompted the Government to provide a race-neutral explanation for its peremptory challenges, we assume that the court found that Williamson satisfied the first step of the *Batson* inquiry. *See Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."). Additionally, *Batson*'s second step was

satisfied because, in the district court's words, the Government provided "genuine race neutral reasons" for its four peremptory strikes against black prospective jurors. [Dkt. No. 93 at 114:25]; *see also Vinson*, 12 F.4th at 1276 ("[The second step of *Batson*] is a very low bar; so long as the basis is race-neutral, 'almost any plausible reason can satisfy the striking party's burden.'" (quoting *United States v. Walker*, 490 F.3d 1282, 1293 (11th Cir. 2007))). Williamson does not contest this on appeal. [Blue Br. at 39–40]. Accordingly, only the third step of *Batson* is at issue: whether, in the trial judge's view, "the offered reasons were sincere or merely pretextual" based on "the arguments of the parties and the relevant evidence." *Vinson*, 12 F.4th at 1276 (citing *Flowers v. Mississippi*, ⸺ U.S. ⸺, 139 S. Ct. 2228, 2243–44 (2019)).

Under *Batson*'s third step, we may only overturn the trial court's decision concerning the sincerity of the Government's proffered race-neutral reasons if the trial court's decision was clearly erroneous. *Foster v. Chatman*, 578 U.S. 488, 500, 136 S. Ct. 1737, 1747 (2016); *see also Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207 (2008) ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."). We use this "highly deferential standard of review," *Snyder*, 552 U.S. at 479, 128 S. Ct. at 1209, because "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact." *Hernandez*, 500 U.S. at 364, 111 S. Ct. at 1868 (plurality opinion). The trial court's determination of whether discriminatory intent is present typically turns on

"whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Id.* at 365, 111 S. Ct. at 1869; *see also Vinson*, 12 F.4th at 1276 (noting that the third step is "fundamentally a determination of credibility"). Accordingly, we cannot "imagine" a race-neutral reason to justify the peremptory strike after the fact; rather, we only look to counsel's stated reasons for her peremptory strike, and counsel must "stand or fall on the plausibility of the reasons [s]he gives." *Miller-El v. Dretke*, 545 U.S. 231, 252, 125 S. Ct. 2317, 2332 (2005). Because we examine only counsel's stated reasons for its peremptory strikes, the Supreme Court has explained,

> There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 365, 111 S. Ct. at 1869 (plurality opinion) (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S. Ct. 844, 854 (1985)). Therefore, we owe the trial judge's findings of discriminatory intent—or lack thereof—great deference since we are merely reviewing a "paper record." *Flowers*, 139 S. Ct. at 2244.

The factors that the reviewing and trial court may consider include (1) "statistical evidence about the prosecutor's use of peremptory strikes against black prospective jurors as compared to white prospective jurors in the case," (2) "evidence of a

prosecutor's disparate questioning and investigation of black and white prospective jurors in the case," (3) "side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case," (4) "a prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing," (5) "relevant history of the State's peremptory strikes in past cases," and (6) "other relevant circumstances that bear upon the issue of racial discrimination." *Id.* at 2243. Here, Williamson's evidence focuses on first and third factors—*i.e.*, the number of peremptory strikes used against black prospective jurors and side-by-side comparisons of stricken black prospective jurors to white jurors.

The Government exercised five of its six initial peremptory strikes, as well as the additional peremptory strike the court granted each party to exercise on an alternate. Four of the six people the Government struck were black: M.B., C.K., J.W., and F.R. Only one black juror was on the panel that sat in judgment of Williamson. Williamson argues on appeal that the district court clearly erred by not finding the Government's race-neutral reasons for its strikes to be pretextual. For M.B. and C.K., Williamson argues that the Government's race-neutral reasons mischaracterized the record, demonstrating their pretextual nature. For J.W. and F.R., Williamson points to several non-black comparator jurors who the Government should have struck if its stated reasons for striking J.W. and F.R. were not pretextual. Because "one racially discriminatory peremptory strike is one too many," we will evaluate

independently each of the Government's four peremptory strikes against M.B., C.K., J.W., and F.R. *Flowers*, 139 S. Ct. at 2241.

## A.

For M.B., the Government stated that he had "a prior conviction for selling or possession of drugs" as its race-neutral reason for striking him, which the district court accepted. [Dkt. No. 93 at 113:22–23]. Williamson argues that this reason mischaracterized M.B.'s response during voir dire, which was as follows:

| | |
|---|---|
| THE COURT: | All right. And you indicated you knew *someone* that had been arrested for possession of marijuana. Do you think that person was treated fairly by the police, the prosecutors, and the courts? |
| A PROSPECTIVE JUROR: | Yes. |
| THE COURT: | And how long ago did that happen? |
| A PROSPECTIVE JUROR: | Probably about 30 years ago. |
| THE COURT: | All right. Anything about that incident that would make it |

8                      Opinion of the Court                   19-14523

difficult for you to
be a fair juror?

A PROSPECTIVE JUROR:          No.

[Dkt No. 93 at 42:19–43:3 (emphasis added)]. This answer indicates, per Williamson's reading, that the Government mischaracterized M.B.'s testimony as saying that he, not someone he knows, had a prior conviction for selling drugs. The Government responds that its race-neutral reason was supported by the record. In M.B.'s jury questionnaire, he was asked whether "you, a member of your family or a close friend ever been arrested," and he answered, "Yes. Possession of marijuana." Accordingly, it was not inaccurate for them to interpret this answer to mean that M.B. was arrested for possession of marijuana.

We agree with the Government. While the Government's race-neutral reason might not have perfectly reflected the record's contents, the district court found that it was a credible justification for striking M.B. As the Supreme Court has explained, "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge," and the trial court is best situated to understand the attorney's "state of mind." *Hernandez*, 500 U.S. at 365, 111 S. Ct. at 1869 (plurality opinion). Accordingly, it was not clear error for the district court to find that the Government's interpretation of M.B.'s ambiguous response on his jury questionnaire was not a pretextual reason for a race-based peremptory strike. *See McNair v. Campbell*, 416 F.3d 1291, 1311 (11th Cir. 2005) ("Although the prosecutor's reason for striking [the

prospective juror] was based on a belief that ultimately proved incorrect, this does not establish by clear and convincing evidence that the state court's finding of fact was erroneous . . . .").

## B.

For C.K., the Government identified the following as its race-neutral reason for striking him: "He has a possession of cocaine.  I believe that he also said that he believes that all felons should have their rights restored and he . . . believes that every responsible person should have a right to own a firearm no matter whether they were a convicted felon or not." [Dkt. No. 93 at 114:1–5].  Williamson argues that this was pretext for two reasons.  First, C.K. had a son, daughter-in-law, brother-in-law, and nephew who all worked in law enforcement, and these familial relationships ought to have made him a favorable juror for the prosecution. [Dkt. No. 93 at 56:6–21].  Second, the Government mischaracterized C.K.'s opinions concerning felons' right to own firearms.  During voir dire and in his jury questionnaire, C.K. stated that whether a convicted felon should be allowed to possess firearms "depends on the conviction."  Accordingly, he did not say that "all" felons should have a right to own a firearm.

In response, the Government notes that it provided two reasons for its peremptory strike: (1) C.K.'s prior arrest for possession of cocaine and (2) his opinions concerning gun rights.  Williamson does not dispute the first reason.  Therefore, it was not clear error for the district court to find that the Government's race-neutral reason was credible.  Additionally, C.K.'s jury questionnaire supports

the Government's second justification.  In response to a question concerning whether C.K. had any "strong feelings about gun laws," he stated, "Every responsible citizen should have the right to own a firearm."  He then said that felons should be allowed to possess firearms, but "it depends on the conviction."  While there is some daylight between the text of C.K.'s answers in his jury question-naire and the Government's description of his answers, that day-light does not demonstrate that the district court clearly erred by finding that the Government's explanation was credible.

C.

The Government identified the following two reasons for striking J.W.: "This is another person who said that a convicted felon, if they served their time, they should be able to have their rights restored.  He was hesitant as to whether or not he could fol-low the law." [Dkt. No. 114:9–12].  During voir dire, the district judge asked J.W. whether he could "set aside [his] personal opinion [that convicted felons should be allowed to possess firearms] and follow the law," and J.W. answered, "Yes." [Dkt. No. 63:16–21].  However, the court noted that he answered "hesitatingly" and fol-lowed up by asking him another version of the same question, to which he answered, "No problem." [Dkt. No. 63:22–64:8].

On appeal, Williamson argues that the Government's rea-son for striking J.W. was pretext because the court rehabilitated J.W. by confirming that he would have "[n]o problem" with fol-lowing the law despite his personal opinions and because two other non-black jurors expressed similar views regarding the rights of

convicted felons during voir dire.  In response, the Government notes that even though the district court confirmed that J.W. would follow the law, that does not imply that the Government struck him for race-based reasons.  When a potential juror's demeanor is a race-neutral reason for a peremptory challenge, the trial court's findings are "of even greater importance" because "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208.  Accordingly, we defer to the trial court "in the absence of exceptional circumstances."  *Id.*, 128 S. Ct. at 1208 (quoting *Hernandez*, 500 U.S. at 366, 111 S. Ct. at 1870 (plurality opinion)).  Here, the court noted J.W.'s hesitancy during voir dire and then found that hesitancy to be a credible basis for the Government's peremptory strike.  Given the deference we owe to the trial court's judgment, we cannot find any exceptional circumstances for overturning the trial court's decision based on this paper record.

Williamson points to non-black jurors who expressed similar views concerning felons' gun rights but who were not struck. However, as the Government notes, neither of these two jurors hesitated when the district court asked if they could set aside their personal opinions.  Accordingly, the two jurors Williamson points to are not valid comparators.

12                    Opinion of the Court                    19-14523

Williamson also argues that if the Government were concerned about J.W.'s hesitancy, it could have asked individual follow up questions. [Blue Br. at 46]. However, each party had only ten minutes to ask individual questions. [Dkt. No. 93 at 87:8–10]. Additionally, the district court stated that it was sure that the parties would not "go over any of the questions we have already covered." [*Id.* at 87:10–11]. Given this context, the Government's failure to ask J.W. for a third time whether he could set aside his personal opinions and follow the law is not proof of the Government's discriminatory intent.

## D.

For F.R., the Government stated two race-neutral reasons for striking him: "His father was convicted for selling drugs. And three uncles were on drugs for years before passing." [Dkt. No. 93 at 114:15–17]. Williamson argues that this was pretext for two reasons. First, he notes that this is a misrepresentation because F.R. only indicated that his father was "arrested" for drug crimes, rather than convicted. [Blue Br. at 12 n.7]. However, as we noted above, this discrepancy between the Government's justification and what the record says does not demonstrate clear error. *McNair*, 416 F.3d at 1311. Second, Williamson points to five non-black jurors as comparators who shared these characteristics. [Blue Br. at 46–47]. These five comparators are as follows:

O.T.:        Mom and sister detained for selling
             drugs [Dkt. No. 93 at 34:2–3]

J.P.:          Relative with substance abuse issues [Dkt. No. 93 at 60:3–7]

P.P.:          Brother-in-law arrested for DUI and relative with long-term substance abuse issue [Dkt. No. 93 at 64:25–65:15]

L.B.:          Uncle arrested for DUI [Dkt. No. 93 at 70:23–24]

E.S.:          Family member who was arrested and prosecuted [Dkt. No. 93 at 78:9–11]

In response, the Government notes that while each of these comparators *either* had a relative arrested for a crime or had a relative with substance abuse issues, none shared *both* characteristics. [Red Br. at 24 n.9]. While this Court has previously found a *Batson* violation based on side-by-side comparisons of black prospective jurors and non-black jurors, *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1257 (11th Cir. 2013), we cannot do so here because the comparators identified by Williamson are not sufficiently similar to prove that the Government struck F.R. because of his race.

E.

Williamson makes a final argument that the district court committed legal error by failing to consider all the facts and circumstances surrounding the Government's peremptory strikes when it overruled his *Batson* challenge. [Blue Br. at 48–50]. Per Williamson, counsel put the district court on notice of the comparator jurors when, after the court overruled the *Batson* challenge, counsel said, "[T]here were other jurors whose family members

have had legal troubles with drugs, and a disproportionate number of those that were struck were African-American." [Dkt. No. 93 at 115:2–6]. The court did not respond to this statement, which, according to Williamson, means that the district court did not comply with Supreme Court precedent dictating how courts must handle *Batson* challenges. *See Miller-El*, 545 U.S. at 252, 125 S. Ct. at 2331 (stating that *Batson* "requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it"). For example, we have held that a state court of appeals did not comply with *Batson*'s third step when there was "no indication from its opinion that [it] considered any of the relevant circumstances bearing on the ultimate issue of discriminatory purpose beyond the fact that the prosecutor had proffered race-neutral reasons for its strikes" and because it "did not even mention all the relevant circumstances brought to its attention." *Adkins*, 710 F.3d at 1252.

However, we cannot hold similarly here. As we stated in *Adkins*, "it is a defendant's burden to prove purposeful discrimination at *Batson*'s third step." *Id.* at 1250. After the trial judge elicited the Government's race-neutral reasons, he asked defense counsel whether "the defense [had] any reason to believe they are not genuine reasons." [Dkt. No. 93 at 114:19–20]. Defense counsel responded, "We will just preserve the objection, Your Honor. I understand the reasons they cited. I think we will just preserve the objection." [*Id.* at 114:21–23]. The court overruled the objection, but defense counsel then interrupted the court to note that "there were other jurors whose family members have had legal troubles

with drugs, and a disproportionate number of those that were struck were African-American." [*Id.* at 115:3–6]. The trial court determined that the defendant had not made a showing of discrimination, and, as explained above, we owe the trial court's factual finding a great deal of deference. *Flowers*, 139 S. Ct. at 2244. Williamson did not note the existence of non-black comparators until *after* the trial judge had overruled his *Batson* challenge. Accordingly, we cannot conclude that the trial judge committed clear error by failing to consider Williamson's arguments after the judge listened to the Government's race-neutral justifications and deemed them credible.

In summary, Williamson has not shown that the district court clearly erred by overruling his *Batson* challenge. Accordingly, we must affirm the district court's decision to reject Williamson's *Batson* challenge.

## II.

Williamson's second argument on appeal is that the district court abused its discretion by limiting his ability to cross-examine the Government's "street slang" expert. In a pre-trial hearing on July 30, 2019, the district court made the following ruling regarding two Government witnesses: "I'm going to blanketedly [*sic*] preclude anybody from using the word gang either to describe what units they are in or any other experience they have." [Dkt. No. 92 at 46:7–9]. But the court said that if Williamson "contest[ed] the expertise or experience" of the witnesses at issue, then those witnesses could mention their experience investigating gangs at that

time. [*Id.* at 46:9–14]. Defense counsel then told the court that he "intend[ed] to cross-examine [one of the witnesses] on the meaning" of the slang term at issue in the trial, but he did not "want to accidentally open the door" to the witness's background in investigating gangs, which might inferentially prejudice Williamson. [*Id.* at 46:16–23]. The district court cautioned defense counsel that he could "ask [the witness] any relevant questions you want," but "[w]hether that opens the door, that is the problem you are going to have. So you will make that strategic decision." [Id. at 47:19–24].

On appeal, Williamson argues that the district court abused its discretion in issuing this ruling because it deprived him of "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986)). According to Williamson, this ruling precluded him from cross-examining the Government's witness on the meaning of the slang term at issue because, if he had done so, it would have opened the door to a highly prejudicial inference of gang affiliation, in violation of Federal Rule of Evidence 403. [Blue Br. at 53]. This constraint on his ability to present a complete defense allegedly violates the Due Process Clause and the Confrontation Clause of the Sixth Amendment. [Blue Br. at 56].

We do not think the limitation the district court placed on Williamson's ability to cross-examine this Government witness violates his Confrontation Clause or Due Process rights. "[T]he

Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985). The Supreme Court has recognized that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1371 (11th Cir. 1994). We review restrictions on cross examination for abuse of discretion. *Id.* Under the abuse-of-discretion standard, we may reverse a district court's decision only if the court applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1270 (11th Cir. 2016).

An appellant may show a Confrontation Clause violation by showing that she was "prohibited from engaging in otherwise appropriate cross-examination" such that "[a] reasonable jury might have received a significantly different impression of [the witness's]

credibility had [appellant's] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680, 106 S. Ct. at 1436. If the appellant meets this burden, then she must show that such error was not harmless. *See id.* at 681, 106 S. Ct. 1436 ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.").

On appeal, the Government argues that Williamson has shown neither a violation of the Confrontation Clause nor that the error was not harmless. We agree that Williamson has not shown a Confrontation Clause violation. The trial court's ruling precluded the Government from introducing evidence of the witness's experience investigating gangs. While the court would have allowed the witness to introduce this information had Williamson's counsel challenged the witness's expertise in interpreting street slang, such a warning to defense counsel that they might open the door to prejudicial information likely did not affect the jury's impression of the witness's credibility.

To the extent that Williamson is arguing that the trial judge abused its discretion by not excluding all references to gangs—regardless of what defense counsel asked during cross-examination—under Rule 403, we must note that this Court "find[s] that the district court abused its discretion under Rule 403 in only the rarest of situations." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011). District courts have "far more experience in evidentiary matters and [are] better equipped to decide them than an appellate

court." *Id.* Accordingly, we cannot conclude that the district court abused its discretion when deciding that Rule 403 would not bar the Government witness's discussion of his background in investigating gangs if Williamson's counsel had opened the door during cross-examination.[1] Because Williamson has not shown a Confrontation Clause violation, we need not reach the issue of harmless error.

In summary, the district court did not abuse its discretion by precluding cross-examination of the Government's witness

---

[1] Williamson alleges two other potential Confrontation Clause violations. First, he argues that the judge's ruling precluded defense counsel from asking why the witness's expert disclosure misspelled the slang term at issue ("glitty" instead of "glizzy"). [Blue Br. at 55–56]. We do not see why that is the case: such a question would not have challenged the witness's "expertise or experience" and so would not have opened the door to the prejudicial information concerning the witness's background. Second, Williamson argues that the district judge, during a sidebar at trial, precluded defense counsel from asking about other parts of the jail call that the witness was interpreting. But this misconstrues what the judge said. During the sidebar, defense counsel stated that he was planning to ask about other parts of the jail call at issue. [Dkt. No. 223:7–13]. The judge then cautioned him, "If you want to get into other statements of the call, you are in danger of opening all the other things we talked about." [*Id.* at 223:17–19]. This warning did not preclude defense counsel from asking the witness about other portions of the call; rather, it merely reminded the defense counsel that he might open the door to prejudicial information should he challenge the witness's "expertise or experience."

without opening the door to prejudicial evidence because the court did not prohibit cross-examination of the expert and, instead, placed reasonable limits on questioning. According, we affirm on this issue.

### III.

Williamson's third argument on appeal is that the district court's imposition of the ACCA's 15-year mandatory minimum sentence violates the Eighth Amendment because Williamson is a young, nonviolent offender. [Blue Br. at 57–61]. Between the ages of 18 and 19, Williamson pled guilty to three separate offenses and served a concurrent sentence of 150 days. [Blue Br. at 29]. Under the ACCA, any person who violates 18 U.S.C. § 922(g) and has at least three prior convictions for violent felonies or serious drug offenses receives a mandatory minimum sentence of 15 years imprisonment. 18 U.S.C. § 924(e)(1). Accordingly, the district court found that the ACCA applied and sentenced him to 188 months. Williamson argues on appeal that his youth should excuse him from the ACCA's mandatory sentencing enhancement under the Eighth Amendment.

In *United States v. Reynolds*, this Court held that the ACCA's 15-year mandatory minimum sentence does not violate the Eighth Amendment. 215 F.3d 1210, 1214 (2000) (per curiam). Williamson tries to get around this precedent by arguing that his sentence was disproportionate because of his youth. He points to two Supreme Court cases that restricted states' ability to impose life-without-parole sentences on juvenile offenders. *See generally*

*Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455 (2012) (holding that a mandatory sentence of life without parole for offenders who were under eighteen at the time of their crimes violated the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010) (holding that the Eighth Amendment bars life without parole sentences for juvenile offenders who did not commit a homicide).

While the Supreme Court has consistently affirmed that "youth matters in sentencing," *Jones v. Mississippi*, --- U.S. ----, 141 S. Ct. 1307, 1314 (2021), these cases do not suggest that the ACCA enhancement as applied here violates the Eighth Amendment. Indeed, this Court has already confronted and rejected this argument. In *United States v. Wilks*, we held that a district court may apply the ACCA's 15-year mandatory minimum where the prior offenses were committed on different occasions, even though the sentences for the offenses were imposed on the same day and even though the offenses were committed while the criminal defendant was a youthful offender. 464 F.3d 1240, 1243–45 (2006). Here, unlike the defendant in *Wilks*, Williamson was an adult—*i.e.,* 18 or older—when he committed each of the three prior offenses that resulted in the court's application of the ACCA enhancement. While Williamson argues that brain development research shows that a youth does not automatically exit adolescence at the age of 18, such evidence does not unravel our binding precedent from *Wilks*. Accordingly, we must affirm the lower court's application of the ACCA's 15-year mandatory minimum.

## IV.

In summary, the district court did not clearly err by rejecting Williamson's *Batson* challenge, did not abuse its discretion when cautioning defense counsel that its cross-examination of a Government witness might open the door to prejudicial information, and did not violate the Eighth Amendment by applying the ACCA's mandatory 15-year minimum sentence.  Therefore, we affirm.

**AFFIRMED.**